LEEDY, C. J., DALTON, HOLLINGSWORTH, HYDE, and WESTHUES, JJ., and STONE, Special Judge, concur.

EAGER, J., not sitting.

**Gus ANISON, Plaintiff-Respondent,**

v.

**Wilbur W. RICE and Eliza Jane Rice, Defendants-Appellants,**

**No. 44665.**

Supreme Court of Missouri.

Division No. 1.

Sept. 12, 1955.

Rehearing Denied Oct. 10, 1955.

---

Boyle G. Clark, Raymond C. Lewis, Jr., Columbia, C. A. Kieffer, St. Louis, Clark & Becker, Columbia, of counsel, for appellants.

Carl F. Sapp, Columbia, Orr & Sapp, Columbia, of counsel, for respondent.

VAN OSDOL, Commissioner.

Plaintiff, Gus Anison, instituted this action against defendants, Wilbur W. Rice and Eliza Jane Rice, for specific performance of an alleged oral contract to execute a note and to secure the same by deed of trust on approximately 692 acres of described land in Boone County. The trial court found that defendants had undertaken to execute the stated instruments as alleged by plaintiff and entered judgment for plaintiff and against defendants for the amount of the principal of such note, interest and attorney's fees, all in the aggregate amount of $7,908; decreed that the described land should be subject to a lien for such amount; and directed that execution issue. Defendants have appealed.

This case illustrates an application of the equitable doctrine of subrogation. It also treats with the power of a trial court in an equitable action to grant relief, even other than and different from that specifically sought by plaintiff if such relief is consistent with the pleadings and the evidence, as well as with the power and duty of an appellate court, in trying an equitable action *de novo* upon appeal, to render or to direct the entry of such judgment as the trial court should have rendered.

Plaintiff had alleged that defendants were owners as joint tenants of the described real property (defendant Eliza Jane is the mother of defendant Wilbur); that the property had been encumbered by the lien of a deed of trust to the Union Central Life Insurance Company, beneficiary; that the debt secured by the lien was in default; that foreclosure by sale under the deed of trust had been commenced, the sale being advertised for July 17, 1952; that on July 16, 1952, defendant Wilbur acting for himself and as agent for his mother, defendant Eliza Jane, orally negotiated and contracted with plaintiff for a loan from plaintiff in the principal amount of $6,600, "said sum to be loaned to the Defendants by the Plaintiff to pay the balance due on the aforedescribed note and Deed of Trust held by the Union Central Life Insurance Company and halt the foreclosure commenced by aforesaid substitute trustee"; that, in consideration for the loan, defendants agreed to execute and deliver their note and secure the same by deed of trust on the described land; that plaintiff performed his part of the contract and advanced the amount ($6,600) to defendants, and at their request plaintiff paid such sum to the Union Central Life Insurance Company in payment and satisfaction of the debt and security therefor "held by said Company and halted the foreclosure commenced against said realty"; that, although plaintiff had made demand upon defendants to perform their part of the contract and to execute and deliver to plaintiff a note and deed of trust as agreed, defendants have failed and refused to comply.

Plaintiff prayed for an order requiring defendants to specifically perform their part of the contract; for an order declaring the described land should be held by plaintiff as security for the loan made by plaintiff to defendants; for an order directing defendants to execute their note and deed of trust; and for such further relief as to the court should "seem meet and just in the premises."

Defendants by separate answers denied those allegations of paragraphs of plaintiff's petition stating the contract, and averred that, moreover, the alleged contract "being a contract concerning land and for the conveyance of land is void because not in writing and same is within the Statute of Frauds"; and defendant Eliza Jane further stated in her separate answer that defendant Wilbur was not authorized by her in writing, or otherwise, to enter into any contract as alleged in plaintiff's petition and so the alleged contract was wholly void.

Plaintiff introduced evidence tending to show that on July 16, 1952, he was a resident of Farmington, New Mexico; that defendant Wilbur W. Rice, at that time, was also a resident of that city; that on or shortly before July 16th defendant Wilbur interviewed plaintiff and subsequently by prearrangement met with plaintiff and one Palmer, plaintiff's attorney, with the purpose of procuring a loan from plaintiff to defendants in the amount of $6,600. According to plaintiff's testimony and that of his witness Palmer, defendant Wilbur in conference with plaintiff and Palmer on July 16th, urged the imminence of the foreclosure (advertised for July 17th) and represented that he would "guarantee" that his mother, defendant Eliza Jane, would sign instruments evidencing a loan from plaintiff to pay defendants' indebtedness to the Union Central Life Insurance Company and to satisfy the lien securing such indebtedness to that Company and would join with defendant Wilbur in making a note to plaintiff and join in securing the same by deed of trust on the described land in Boone County.

Plaintiff and his witness Palmer also testified that plaintiff advanced defendant Wilbur the sum of $6,600; that the attorney Palmer, acting for plaintiff and at defendant Wilbur's request, transmitted by telegraphic money order the sum of $6,083 to the Union Central Life Insurance Company to satisfy Company's encumbrance; that the cost of transmitting the $6,083 to the Company was $18.03, "there was a little variation there"; that the balance of the $6,600 was paid over to defendant Wilbur personally, because he "needed it for items which were pressing him around Farmington"; and that the Union Central Life Insurance Company executed its release as of date July 21, 1952, releasing the lien held by Company.

Plaintiff and his witness Palmer further testified that defendant Wilbur, at the time the loan was consummated, executed a note in their presence in the principal sum of $6,600, due on or before six months from date with interest at 8 per cent payable semi-annually and with 10 per cent additional on the amount unpaid, if placed for collection in the hands of an attorney. (This note [Plaintiff's Exhibit 1] was admitted into evidence over the objection of defendants.) At the time, according to plaintiff's evidence, the attorney Palmer also prepared a deed of trust (New Mexico form) which defendant Wilbur signed, but which mortgage was considered a "preliminary security" pending the procurance and execution by defendants of a deed of trust, Missouri form; this instrument (the "New Mexico form" mortgage), according to plaintiff's evidence, was subsequently "lifted" by defendant Wilbur from the file of the attorney Palmer.

Defendant testified that he did not sign the note (Plaintiff's Exhibit 1); that plaintiff lent him, defendant Wilbur, $6,100, the loan being made on his unsecured note; that he signed a note for that amount "for five years at seven percent interest"; that he did not agree or "guarantee" that he and his mother were to execute a deed of trust on the described land to secure the note he signed (for $6,100), or any other; and that he had no authority from his mother to encumber the land and had so advised plaintiff and the attorney Palmer. However, defendant Wilbur in his testimony admitted he had, just prior to July 17th, importuned plaintiff for a loan to take up the Union Central Life Insurance Company indebtedness and to prevent the foreclosure—"I told him I needed some money and needed it badly and needed it quickly."

The trial court specifically found, inter alia, as follows,

"The Court doth further find that on the 16th day of July 1952, the plaintiff loaned to the defendants the sum of $6600.00 for the purpose of paying the balance due on the note and deed of trust held by the Union Central Life Insurance Company, that said sum was loaned to the defendants at the request of defendant Wilbur W. Rice, acting for himself and as the agent of defendant Eliza Jane Rice, and that said sum was forwarded to the trustee for the Union Central Life Insurance Company, that as a result thereof the foreclosure against said realty was stopped and the deed of trust was released.

"The Court doth further find that on the 16th day of July, 1952, the defendant Wilbur W. Rice, acting for himself and as the agent for defendant Eliza Jane Rice, executed and delivered to the plaintiff a note in the sum of $6600.00, bearing interest at the rate of 8% per annum, principal and interest payable six months from the date of execution, and providing for payment of an additional sum of 10% of the principal as attorney's fees if said note was collected by process of law.

"The Court doth further find that on the 16th day of July 1952, the defendant Wilbur W. Rice for himself and as agent for defendant Eliza Jane Rice, agreed to execute a deed of trust covering the aforesaid realty to stand as security for the note made payable to the plaintiff, and to allow the plaintiff to be subrogated to the security of the aforedescribed realty in the same manner as had the Union Central Life Insurance Company."

As stated, the trial court ordered and decreed that plaintiff have judgment with interest and attorney's fees and ordered and decreed that the judgment be declared a lien on the described land.

We have observed that the trial court specifically found that defendant Wilbur was acting as the agent of his mother. We are of the opinion this finding was not sufficiently supported by competent evidence. There was evidence tending to support a conclusion that defendant Wilbur had authority from his mother to execute contracts of lease or deal with tenants, that is, there was evidence to support a conclusion that defendant Wilbur was his mother's agent in the particular matter of renting the farm, yet there was no showing that defendant Wilbur had express authority from his mother to borrow money to retire an encumbrance or for his own personal needs or to contract for her to subject the described land to liens to secure money borrowed, and it would seem such authority is not a usual incident or requisite to the proper performance of duties delegated to him in handling rentals and so may not be implied. See generally Restatement of the Law of Agency, § 74; Vol. 2, Am.Jur., Agency, §§ 156–157, pp. 125–126. Now it seems plaintiff, because of the failure of proof of defendant Wilbur's agential authority as alleged, did not prove the contract as pleaded, and for that reason alone may not have the relief of specific performance of the contract as prayed in his petition; consequently, we deem it unnecessary to consider defendant-appellant's contention that the alleged contract, inasmuch as it was not in writing, was within the purview of the Statute of Frauds. Further, and for the same reason, it would seem that no money judgment for $6,600 (and interest and attorney's fees) should have been rendered against the defendant Eliza Jane. This does not mean that plaintiff is not to be afforded relief as against both defendants by the application of equitable principles within the purview of the pleadings and the evidence; nor does it mean that in doing complete justice as between the parties a money judgment in the amount of $6,600 with interest and attorney's fees may not be rendered against defendant Wilbur.

Having examined and weighed the evidence and having given deference to the

findings of an able and experienced trial chancellor on the conflicting verbal evidence, we are of the opinion the weight of the evidence supports the finding that defendant Wilbur signed Plaintiff's Exhibit 1, and we believe the exhibit in connection with and in corroboration of the testimony of plaintiff and his witness Palmer clearly proves plaintiff advanced defendant Wilbur the amount of $6,600 at his request. (However, as noted, the evidence shows that but $6,100 of the amount was used to discharge defendants' secured obligation.) Now the facts that $6,100 of the money was advanced for the purpose and was used at defendant Wilbur's instance in the discharge of defendants' obligation to the Union Central Life Insurance Company are sustained by undisputed and convincing evidence—this must be and is, in effect, conceded by defendants.

We do not follow defendants-appellants' contentions and argument that Plaintiff's Exhibit 1 was not admissible, and that its admission into evidence constituted a complete departure and interposed or substituted a new and different claim or cause of action cognizable only in a court of law and deprived defendants of the right to trial of the factual issues by a jury. The exhibit, as we have said, corroborated the testimony of plaintiff and his witness as to the amount and terms of the loan which defendant Wilbur had procured from plaintiff upon the promise and representation that he, defendant Wilbur, and his mother would become personally obligated to pay and would sign an instrument securing such loan and indebtedness. Even though it seems the exhibit (and the New Mexico form mortgage) was of but "temporary" nature and no other and final instruments were signed by defendants, the exhibit evidenced, fixed and measured the amount and the terms of an obligation which, in the circumstances, defendant Wilbur incurred to plaintiff. And we see no real reason why a money judgment may not be rendered against defendant Wilbur for the full amount of the principal and interest as well as attorney's fees as provided in the note (Plaintiff's Exhibit 1) in doing complete justice to and between the parties to this litigation, in addition to and in connection with the equitable relief which the facts of the case demand and which we shall hereinafter direct the trial court to enter.

This is not a case wherein no equitable right was violated and no equitable relief granted, or a case wherein, to the knowledge of a plaintiff, no enforcible equitable claim existed and a court of equity was asked to render judgment on purely legal issues, as in cases cited by defendants-appellants. For examples see Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473; McQueen v. Chouteau's Heirs, 20 Mo. 222; Stockhausen v. Oehler, 186 Wis. 277, 201 N.W. 823.

When a court of equity once acquires jurisdiction, it will retain it to do full and complete justice even though it involves adjudicating matters of law or rendering a money judgment; and, although a plaintiff in his petition may seek or pray for specific relief and, in so doing, has even mistaken the specific relief to which he is entitled, a court of equity may grant relief different from the specific relief sought but consistent with the pleadings and the evidence, especially where, as herein, there has been a general prayer for relief. And an appellate court in reviewing the whole record, in trying an equitable action *de novo* upon appeal, may render or direct the entry of such judgment as the trial court should have rendered. Bobst v. Sons, Mo., 252 S.W.2d 303; Missouri Cafeteria v. McVey, 362 Mo. 583, 242 S.W.2d 549; Miller v. Haberman, 359 Mo. 1012, 224 S. W.2d 1002; Strohm v. Boden, 359 Mo. 573, 222 S.W.2d 772; Hallauer v. Lackey, 353 Mo. 1244, 188 S.W.2d 30; Waugh v. Williams, 342 Mo. 903, 119 S.W.2d 223; Rains v. Moulder, 338 Mo. 275, 90 S.W.2d 81; Marston v. Catterlin, 290 Mo. 185, 234 S.W. 816; Real Estate Sav. Inst. v. Collonious, 63 Mo. 290; Section 512.160, subd. 3 RSMo 1949, V.A.M.S.

In the instant case, on the facts as pleaded and as shown in evidence, the

plaintiff's right (to security for the payment of $6,100 and interest) by invoking the equitable assignment by way of subrogation of the security (and according to its terms) as formerly held by the Union Central Life Insurance Company is clear.

■ It has been said that the doctrine of subrogation applies to a great variety of cases, but no general rule can be laid down which will afford a test in all cases for its application, and whether or not it is applicable depends on the facts and circumstances of each case as it arises. 83 C.J.S., Subrogation, § 5, p. 588. Under some circumstances, the payment of the amount due on a mortgage, when made by certain classes of persons (not mere volunteers), is held in equity to operate as an assignment of the mortgage. By means of the payment, the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit. "The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit; such a person is in no true sense a mere stranger and volunteer." Vol. 4, Pomeroy's Equity Jurisprudence, 5th Ed., § 1211, p. 635, and § 1212, p. 636, at page 640. It has also been restated that where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder. Restatement of the Law of Restitution, § 162. "A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant, where the plaintiff's property has been used in discharging an obligation owed by the defendant or a lien upon the property of the defendant, by creating in the plaintiff rights similar to those which an obligee or lien-holder had before the obligation or lien was discharged. In such a case the procedure is called subrogation, and the plaintiff is said to be subrogated to the position of the obligee or lien-holder. Although the obligation or lien has been discharged, the plaintiff can maintain a proceeding in equity to revive it for his benefit; in such a proceeding the court will create for the benefit of the plaintiff an equitable obligation or lien similar to that which was discharged. * * *" Comment "a", § 162, Restatement, supra.

■ In the instant case, plaintiff, of course, was not a mere volunteer. He was requested by defendant Wilbur, one of the obligors of the indebtedness secured by deed of trust to the Union Central Life Insurance Company and one of the owners of the land so encumbered, to advance and plaintiff did advance monies to retire, and the amount of $6,100 of the money so advanced was used to retire, the indebtedness, release the lien and prevent the foreclosure. Now while the right to invoke the doctrine of subrogation may be contractual, it may exist with or without regard to contract express or implied, although not where it would be inconsistent

with the terms of contract. Capen v. Garrison, 193 Mo. 335, 92 S.W. 368, 5 L.R.A., N.S., 838.

In Smith v. Sprague, 244 Mich. 577, 222 N.W. 207, 208, defendant and her husband owned a parcel of land as tenants by the entireties. There was an encumbrance on the land. The debt secured was due and foreclosure threatened. Plaintiff, the former daughter-in-law of defendant and husband, at the request of husband, advanced the money to release the mortgage. The husband had said to plaintiff, " 'We will in turn give you a mortgage.' " The husband's demand notes were given evidencing the indebtedness, and the husband repeatedly promised to provide the promised security, but he died without having kept the promise. Plaintiff's bill was filed for subrogation, and the trial court applied the doctrine, affording plaintiff relief by decree which was affirmed upon appeal. Defendant wife upon appeal contended it had not been shown the husband had authority to bind the wife in promising security and subrogation. Although the evidence supported the fair inference that the husband was authorized to act, and did act, for both himself and defendant wife, the matter was not necessary to the decision. The court was not enforcing a contract. It was applying the equitable principle of subrogation. In the shown circumstances that plaintiff paid the money to satisfy the encumbrance at the instance, promise and request of the husband, plaintiff was not a mere volunteer, and in these circumstances it was not necessary to go further and show the defendant wife made like promise and request. She, as did the husband, received the benefit of the discharge of the obligation.

The judgment and decree as rendered by the trial court should be reversed, and the cause should be remanded with directions to enter a money judgment against defendant Wilbur W. Rice for an amount equal to the principal and interest and attorney's fees as provided in Plaintiff's Exhibit 1, and to hear evidence and determine the terms of the Union Central Life Insurance Company loan and security and order the revival of the lien thereof to the use of plaintiff in securing the payment of $6,100 with interest from July 16, 1952, and with the right of foreclosure of the lien by sale in accordance with the terms of the Union Central Life Insurance Company loan and security, such foreclosure to be conducted by a substitute trustee appointed by the court, if necessary or expedient; such net proceeds of the foreclosure sale as may exceed the amount necessary to pay over $6,100 and interest to plaintiff to be divided and half paid over to defendant Eliza Jane Rice, and half (or sufficient thereof, when added to the $6,100 and interest, to satisfy the money judgment against defendant Wilbur W. Rice) to be paid over to plaintiff and credited, together with the $6,100 and interest paid over to plaintiff, on the money judgment against defendant Wilbur W. Rice; should the net proceeds of the sale on foreclosure be deficient, that is, less than $6,100 and interest, then the amount of the net proceeds of the sale to be paid over to plaintiff and credited on the money judgment against defendant Wilbur W. Rice, and in such event the court to render a money judgment against defendant Eliza Jane Rice for such deficiency, any amount paid by her to satisfy such deficiency judgment or collected by execution on such deficiency judgment against her to be paid over to plaintiff and credited on the money judgment against defendant Wilbur W. Rice; and in any event plaintiff shall have execution on the money judgment against defendant Wilbur W. Rice for any further amount as may be necessary, after all credits thereon are entered as hereinbefore directed, to satisfy the money judgment against that defendant.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.