Marian J. WULFERT,
Plaintiff-Respondent,

v.

BOATMEN'S BANK OF JEFFERSON COUNTY, Defendant-Appellant,

and

Rita Shady, Ronald Eisenbeis and Tower Grove Bank and Trust, Defendants.

No. 47025.

Missouri Court of Appeals,
Eastern District,
Division One.

May 1, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1984.

Application to Transfer Denied
July 17, 1984.

Francis E. Pennington, III, St. Louis, for defendant-appellant.

Michael A. Forst, St. Louis, for plaintiff-respondent.

STEWART, Judge.

Plaintiff filed an action against Boatmen's Bank of Jefferson County and Rita Shady challenging the validity of five assignments purporting to assign a savings account and four certificates of deposit to Boatmen's as collateral security for a loan made by Boatmen's to Ronald Eisenbeis. Eisenbeis and Tower Grove Bank and Trust Company were subsequently made parties to the action. Boatmen's filed a counter-claim against plaintiff and cross claims against Shady, Eisenbeis and Tower Grove. Tower Grove was permitted to interplead the funds represented by the savings account and the certificates of deposit and by stipulation of the parties retained the funds pending the litigation. In the court tried case the trial court found that the assignments were invalid and entered judgment in favor of plaintiff against Boatmen's. The court also found for Boatmen's against Eisenbeis on the note executed by Eisenbeis and entered judgment against him in the sum of $44,100.00.

Boatmen's has appealed contending that the trial court erred in (1) finding that plaintiff did not execute the assignments because it was against the weight of the evidence; (2) finding that the assignments were unenforceable without the signature of Mrs. Shady's husband, because Rita Shady was one of three joint tenants, any one of whom had the power to make the assignments; (3) holding that the assignments were unenforceable because they were applicable only to a loan made to the assignors, in that this conclusion ignored the intention of the parties; (4) finding against it as to plaintiff and Rita Shady on the ground that the contracts were unenforceable by their terms, because the assignments expressed the intentions of the parties and thus were enforceable contracts; and (5) in failing to find it was entitled to reimbursement for amounts it conveyed to Tower Grove to pay the balance of a loan made to plaintiff by Tower Grove for the benefit of Eisenbeis.

The primary contested issue is whether plaintiff executed the assignment forms. In considering this issue we accord the trial court the same deference that we accord a jury with respect to the findings of fact.

Plaintiff, an elderly woman, moved back to St. Louis in 1970, after the death of her husband. Al Shady is plaintiff's brother,

Rita Shady is the wife of Al Shady. Ronald Eisenbeis is the son-in-law of Mr. and Mrs. Shady.

Plaintiff opened a savings account at Tower Grove on April 30, 1970. As a convenience to plaintiff, the names of plaintiff's brother and his wife were placed upon the account, and they signed the signature card. The account read "Marian Wulfert or Mrs. Al Shady or Al Shady." Plaintiff also purchased four certificates of deposit in the names of "Marian Wulfert or Al Shady or Rita Shady." Neither Al Shady nor Rita Shady claim any interest in the savings account or the certificates of deposit.

On January 16, 1981, Mr. Eisenbeis borrowed $42,000.00 from Boatmen's Bank and executed a promissory note in that amount. To secure the note he presented an assignment of plaintiff's savings account and of the certificates of deposit. The assignment forms had been signed by Mrs. Shady and contained a signature purporting to be that of plaintiff. A portion of these proceeds were used to pay off the balance of a note executed by plaintiff and Mrs. Shady payable to Tower Grove and secured by the same collateral contested here. Plaintiff had borrowed the money from Tower Grove for the purpose of making a loan in the same amount to Eisenbeis.

When Mr. Eisenbeis offered to put up the savings account and certificates of deposit as collateral security on the promissory note executed with Boatmen's Bank, the president of the bank requested that Eisenbeis have the assignments notarized. Boatmen's provided Mr. Eisenbeis with five unsigned assignment forms. On or about January 15, 1981, Mr. Eisenbeis took the forms to Mrs. Shady at her home, where she signed them. Mrs. Shady understood that the four certificates of deposit and the savings account were to be used as collateral for Mr. Eisenbeis' loan at Boatmen's Bank. Mrs. Shady signed the assignments with the belief that Mr. Eisenbeis had made arrangements with Mrs. Wulfert, and that Mrs. Wulfert had agreed to assign her securities to Boatmen's Bank. Plaintiff

was not at Mrs. Shady's home when Mrs. Shady signed the forms and she did not see plaintiff sign them. Mrs. Shady testified that she imagined or supposed she had spoken to plaintiff before signing the forms.

Mr. Eisenbeis did not appear at the trial although he was under subpoena. Portions of his deposition were read into evidence. He testified that he had arranged to meet plaintiff and Mrs. Shady at plaintiff's home for the purpose of assigning the collateral security; that he "told them here are the papers switched from Tower Grove to Boatmen's and sign them.".

A handwriting expert testified that in his opinion there were no features of forgery in the signatures on the assignment forms. He also testified that the typical features of forgery are slow awkward pen movements.

Plaintiff testified that she had not been asked to sign the documents in question and the signature "Marian J. Wulfert" on the documents was not hers and that she was unaware of the transaction until she received a telephone call from Boatmen's advising her that Mr. Eisenbeis' note was in default and that they were looking to the security for payment.

The notary public who purported to take the acknowledgements was the sister of Mr. Eisenbeis. She testified that she was not present when the assignments were executed. She signed as notary at the request of her brother who brought the forms to her at home.

■ There was sufficient substantial evidence for the court to believe that through the machinations of Eisenbeis the signature of plaintiff had been forged. Mr. Eisenbeis was the only person who professed to have seen her sign the assignments. He testified however that plaintiff and Mrs. Shady were together in plaintiff's home when they signed the documents. This is in direct conflict with Mrs. Shady's testimony. The court could also believe that the seed of Mrs. Shady's belief that plaintiff

had agreed to execute the documents was planted by Mr. Eisenbeis.

■ The expert's opinion carries no greater weight than the testimony of other witnesses. The court could have found that the signature of "Marian J. Wulfert," appearing on the documents, was made of slow awkward pen movements, typical features of a forgery.

The trial court's findings are supported by substantial evidence.

■ It is conceded by Boatmen's that the certificates of deposit are not in the form to create a joint tenancy. The evidence establishes that the certificates of deposit were purchased by plaintiff with her money and that Mr. and Mrs. Al Shady had no interest in these instruments and are named in them solely for convenience. Plaintiff was the owner of the account and she alone could assign the certificates of deposit. Inasmuch as she did not sign the purported assignments, no assignment of the certificates of deposit was made. See *Barnes v. Bank of Bourbon,* 619 S.W.2d 906, 909[2] (Mo.App.1981).

We next consider the matter of whether the signature of Mrs. Shady alone was sufficient to assign the savings account. The trial court found and concluded that there was a tenancy by the entirety as between Al Shady and Mrs. Al Shady who together hold a one-half interest in joint tenancy with plaintiff. As a result, Mrs. Shady alone could not assign the savings account as security for the loan.

Boatmen's argues that the depositor's agreement under which the account was established brings it within § 362.470, RSMo 1978.[1]

The statute 362.470(1) provides:

1. When a deposit is made by any person in the name of the depositor and any one or more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them.

The statute also provides at § 362.470(5): "Any deposit made in the name of two persons or the survivor thereof who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified."

The depositor's agreement reads as follows:

The undersigned hereby open an account with the TOWER GROVE BANK AND TRUST COMPANY, ..., in the names of Marian Wulfert or Mrs. Al Shady or Al Shady payable to either or the survivor.

We declare that we are the joint owners of the money this day deposited in said account and that future deposits made by either of us in said account or any proper interest accrued or credited thereon be and is our joint property....

We believe it significant that § 362.470 contains subparagraph (5) which reiterates the common law rule that an account opened in the names of two persons or the survivor who are husband and wife, shall be considered a tenancy by the entirety, unless otherwise specified. *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 396 S.W.2d 570 (Mo. banc 1965). See *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shackelford,* 591 S.W.2d 210 (Mo. App.1979).

■ When we read § 362.470(1) along with § 362.470(5) it is clear that deposits made in the form of § 362.470(1) by persons who are husband and wife are not governed by that subsection but by § 362.-

---

1. All statutory references herein are to Mo.Rev. Stat.1978 unless otherwise specified.

470(5). The common law rule with respect to deposits made in the names of spouses continues to be the rule under this statute.

■ The presumption that such an account is held by the entirety is rebuttable. The evidence to overthrow the presumption must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the chancellor's mind. *In re Estate of Jeffries,* 427 S.W.2d 439, 444 (Mo.1968).

■ In the present case Mr. and Mrs. Al Shady are husband and wife; the presumption is that they acquired one-half of the account as tenants by the entirety. Plaintiff holds her half of the account jointly with the entirety estate. There is nothing in the signature card that would show a clear intent to the contrary. There is no other evidence that would tend to rebut the strong presumption created by the language and form used here.

■ To be effective, the assignment should have been signed either by plaintiff or by both Mr. and Mrs. Shady. The assignment was signed only by Mrs. Shady and the chancellor properly held that it was ineffective.

Finally, Boatmen's claims that plaintiff is indebted to it on the theory of equitable subrogation for the amount paid to Tower Grove that extinguished the plaintiff's obligation to Tower Grove.

Prior to Mr. Eisenbeis' transaction with Boatmen's he had obtained a loan from plaintiff. In order to make the loan to Mr. Eisenbeis plaintiff obtained a loan from Tower Grove using the savings account and the certificates of deposit as collateral security. When Eisenbeis obtained the loan from Boatmen's a portion of the proceeds of that loan was used to pay Eisenbeis' obligation to pay the balance due on plaintiff's note to Tower Grove. This had the effect of releasing the collateral security held by Tower Grove.

Boatmen's relies primarily on *Anison v. Rice,* 282 S.W.2d 497 (Mo.1955). In that case foreclosure was imminent on Missouri property owned by mother and son. The son, who was in New Mexico, negotiated a loan with plaintiff in New Mexico for the purpose of paying the note to avoid foreclosure. He "guaranteed" that he and his mother would execute a note secured by deed of trust on the real property in Missouri. The son signed a note in the sum of $6,600.00 and a New Mexico form of a deed of trust as preliminary security until the proper note and deed of trust would be executed. The plaintiff wired $6,100.00 to the trustee in the deed of trust to pay the delinquent note and release the deed of trust, so as to avoid the foreclosure that was to take place on the date of the transaction. The mother and son never signed the contemplated note and deed of trust.

The court in *Anison* applied the doctrine of equitable subrogation, entered a money judgment against the son and encumbered the land of the son and the mother as security to the extent of the prior deed of trust. The court emphasized the fact that plaintiff acted at the request of one of the obligors of the indebtedness secured by deed of trust who was also one of the owners of the land that was incumbered.

■ Mr. Eisenbeis was indebted to plaintiff not to Tower Grove. He has no interest in the savings account or in the certificates of deposit that secured the note of plaintiff to Tower Grove. There is no evidence that the Tower Grove note was delinquent and the security in jeopardy.

Mr. Eisenbeis was in need of additional funds and went to Boatmen's for a loan. Mr. Eisenbeis had been a client of Boatmen's bank prior to the time that he made the loan in question. Boatmen's did not know plaintiff and, as distinguishable from *Anison,* did not intend to make a loan to her. It made the loan to Mr. Eisenbeis. Boatmen's wanted security for its loan. A portion of the money borrowed by Eisenbeis from Boatmen's was used to pay his indebtedness to plaintiff. By paying the money directly to Tower Grove, plaintiff's collateral was released so it could be available to meet Mr. Eisenbeis' commitment to provide collateral to Boatmen's in order to obtain the loan. This transaction was

made for the benefit of Boatmen's and Eisenbeis. Boatmen's drew the assignments and entrusted them to Mr. Eisenbeis to obtain the signatures of the holders of the certificates of deposit and the savings account. Plaintiff was readily available but there is no evidence that Boatmen's informed her that Eisenbeis had applied for a loan, and was intending to use her property as security. It did not inform plaintiff that a portion of the loan was being used to pay Eisenbeis' indebtedness to her by paying her note at Tower Grove.

Boatmen's accepted the invalid assignments offered by Eisenbeis without requiring surrender of the savings book and the certificates of deposit. It did not make a reasonable attempt to determine who the parties to those instruments were. If it had checked it would have known that Mr. Shady had an interest in the security and that plaintiff was unaware of the transaction. Boatmen's undertook to trust Mr. Eisenbeis and accept the note and the security offered by him before it released the funds. Plaintiff here did not induce Boatmen's to make the loan to Mr. Eisenbeis. Boatmen's made the loan upon the representation of Eisenbeis that the assignments were valid. It was mistaken.

Although the bank distributed the funds to Tower Grove the funds belonged to Eisenbeis. It was Mr. Eisenbeis, not Boatmen's, who paid his indebtedness to plaintiff.

As said in *Anison v. Rice*, "[N]o general rule can be laid down which will afford a test in all cases for ... [the application of the doctrine of equitable subrogation], and whether or not it is applicable depends on the facts and circumstances of each case as it arises." 282 S.W.2d at 503. Such a doctrine should be applied with caution.

In many instances loans are obtained for the purpose of paying pre-existing debts. To apply the doctrine of equitable subrogation in such cases as this would tend to make the creditor who had been paid liable to the payee of the note for the amount he received. This would create an intolerable situation.

The facts in this case do not call for the application of the doctrine of equitable subrogation.

Under the facts in this case only Eisenbeis is liable to Boatmen's and the trial court entered judgment against him for the balance due on the note.

In view of the conclusion we have reached it is not necessary to discuss other issues raised by the parties.

The judgment is affirmed.

KELLY, P.J., and SNYDER, J., concur.