Stump v. Hornback.

STUMP *et al.* v. HORNBACK *et al.*, *Appellants.*

1. Ejectment: SUIT FOR IMPROVEMENTS: STATUTES. It is only where the plaintiff in ejectment elects, under Revised Statutes, section 2262, to relinquish the land to the occupying claimant, and to recover its value, aside from the improvements, that the court is authorized to render judgment, under Revised Statutes, section 2263, that the occupying claimant shall take the land and pay the plaintiff its ascertained value.

2. ———: ———: CONSTITUTION. The statute (R. S., sec. 2263) authorizing the above judgment in such case is constitutional.

*Appeal from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

Stump v. Hornback.

*C. W. Wilson* for appellants.

(1) The judgment is in violation of the constitution of Missouri, and should be reversed on that account. Const. Mo. (1875) art. 2, sec. 20 ; *Dickey v. Tennison,* 27 Mo. 373 ; *Osborne v. Hart,* 24 Wis. 89 and 92 ; *Sadler v. Langham,* 34 Ala. 311 and 330 ; *Taylor v. Porter,* 4 Hill (N. Y.) 140 ; *Clark v. White,* 2 Swan (Tenn.) 548, 549 ; *Freight Co. v. Mayor,* 4 Cold. (Tenn.) 419, 428 ; *St. Charles v. Nolle,* 51 Mo. 122, 124, 125 ; *Walls v. City of Weston,* 22 Mo. 388 ; *Neenan v. Smith,* 50 Mo. 529 ; *City of St. Louis v. Allen,* 53 Mo. 44, 56, 57 ; *Seibert v. Copp,* 62 Mo. 186 ; *Carlin v. Cavender,* 56 Mo. 289.

*T. F. McDearmon* for respondents.

The statute upon which this action is based is constitutional. *Lee v. Bowman,* 55 Mo. 400; *Russell v. Defrance,* 39 Mo. 506 ; *Dothage v. Stuart,* 35 Mo. 251; *Green v. Biddle,* 8 Wheat. 1.

BRACE, J.—In an ejectment suit brought in the circuit court of St. Charles county the appellants recovered judgment against the respondents for 97.47 acres of land in said county. The present suit was instituted by respondents in the same court under Revised Statutes, 1879, section 2259, to recover compensation for improvements made on said land in good faith by respondents and their ancestor. On the trial of the case the jury found the value of the improvements to be $1,960, and "the value of the land, aside from the improvements, to be $1,462.05," and the judgment was, "that the plaintiffs within one year from this date pay to the defendants the sum of $1,462.05, and that said defendants thereupon make and deliver to the said plaintiffs a conveyance with general warranty for said lands, and in the event of the failure of defendants or either of them, from legal inability or

otherwise, to make and deliver to plaintiffs said deed upon the payment of said sum of $1,462.05, it is ordered that the plaintiffs pay into court said sum of money for the use of the defendants, and upon such payment, it is ordered .* * * that the title to said real estate be divested from the said defendants, and vested in these plaintiffs forever, and it is further ordered * * * that, in case plaintiffs make default in the payment of said sum to the defendants within the time herein specified, the defendants shall have possession of said land discharged from all claims of the plaintiffs.'' From this judgment, respondents appealed to the St. Louis court of appeals, where the judgment was affirmed, and they have prosecuted their appeal to this court.

. It is here urged that said judgment is in violation of section 20 of the Bill of Rights, article 2, of the constitution of 1875, which declares, ''that no property can be taken for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes in such manner as may be prescribed by law.'' There is nothing in the record to show that respondents consented to this judgment, and the case falls within neither of the exceptions of the constitutional provisions, and the effect of the judgment is to take the property of one person for the private use of another, with compensation, but without his consent , and is, consequently, in violation of the article above quoted. And if, in conformity with the provisions of sections 2263 and 2264, Revised Statutes, 1879, when properly construed, those sections are unconstitutional.

It must be conceded that if those sections be read alone, disconnected from the text of the whole act, they give good color for the form of judgment entered in this case, but when considered in their connection in the entire enactment, in the light of its general purpose and

object, and of the character and form of the proceeding
adopted for the accomplishment of that purpose, as dis-
closed thereby, it will become apparent that while the
judgment *is*, those sections of the statute *are not*, ob-
noxious to the provisions of article 2 of the constitution.
It may be as well to premise the consideration of this
question by the expression of the opinion, that if said sec-
tions are unconstitutional by reason of their infraction
of the rights of private property, as expressly guaran-
teed by article 2, they would have been unconstitutional
as well *before* as since the adoption of that article,
since the insertion thereof in the constitution of 1875·
does no more than merely emphasize and make more
prominent a vital principle breathing through and per-
meating the whole body of the present as of each pre-
ceding constitution of the state, as it must the organic·
law of every government among men instituted to secure
to a free people protection to life, liberty, and property.

Laws in their general scope and purpose like unto ours
have been passed in very many states of the Union, and
have been upheld by the courts, both state and national.
The principle upon which they are founded is aptly
stated in an early case upon the Vermont statute: "The
action for betterments * * * is given on the suppo-
sition that the legal title is found to be in the
plaintiff in ejectment, and is intended to secure to
the defendant the fruit of his labor, and to the
plaintiff all he is justly entitled to; which is his
land in as good a situation as it would have been
had no labor been bestowed thereon. The statute is
highly equitable in all its provisions, and would do
exact justice if the value, either of the improvements or·
of the land, was always correctly estimated. * * *
It gives to the possessor not the expense which he has
laid out on the land, but the amount which he has in-
creased the value of the land by his betterments thereon;
or, in other words, the difference between the value of

the land when the owner recovers it and the value if no improvements had been made. If the owner takes the land together with the improvements at the advanced value which it has from the labor of the possessor, what can be more just than that he should pay the difference? But if he is unwilling to pay this difference, by giving a deed as the statute provides, he receives the value as it would have been if nothing had been done thereon." Cooley's Const. Lim. [4 Ed.] 485, and authorities cited in note 1, p. 486; *Ross v. Irving*, 14 Ill. 171.

This equitable principle was first grafted upon our statutory act regulating the action of ejectment in 1825, and has remained substantially the same ever since. The form it there assumed, and has since maintained, is that of an equitable proceeding by way of injunction to restrain the successful claimant by paramount title of real estate in an action of ejectment, who has obtained a judgment for the recovery thereof, from entering into possession of the land under his judgment until he has paid the occupying claimant for his improvements made in good faith thereon; the value thereof to be ascertained in the manner provided for in the statute. The object was not to deprive him of his land with or without his consent, or the possession of it, but simply to withhold the possession until he paid the occupying claimant the value such claimant had added to the land by his improvements. The law said to the owner, you have sought the assistance of the law to enable you to recover your land from another, who in good faith believed it was his, and in such faith has enhanced the value of your property, now, you shall have possession of it, but not until you yourself have done "that justice which the law loveth," and paid that enhanced value to him who hath earned it. In this light has this proceeding been regarded by this court in such cases as have come before it involving its construction; consequently, in *Malone v. Stretcher*, 69 Mo. 25, it was held that the

proceeding to enjoin must be instituted before eviction from the premises, and in the court in which the judgment in ejectment was rendered; and in *Russell v. Defrance*, 39 Mo. 506, that the court cannot enter judgment against the plaintiff in ejectment for the value of the improvements and enforce the same by execution.

It follows, from the principle of these cases, that the nature of the proceeding is simply to enjoin the execution of process on the judgment of ouster, in the ejectment, in which affirmative relief cannot be granted to the claimant in possession, even to the extent of a judgment for the value of his improvements. So far as he is concerned, unless the owner consents, he must take their value and give up the possession of the land; the only relief the law gives him is negative in restraining the plaintiff from taking possession under his judgment until he pays the claimant for his improvements. That a law granting him this relief is not unconstitutional is supported by the great weight of authority in the states where the question has been passed upon. See the long list of cases cited in Cooley on Const. Lim. [4 Ed.] note 1, p. 486; also 2 Story's Eq. 799; and 2 Kent Comm., 335, 336, and notes. That the granting of relief in this form to the occupying claimant might work no greater hardship to the plaintiff than is absolutely necessary to ensure justice to the former, sections 2262 to 2266, inclusive, were enacted to provide a *modus vivendi* for *him*. If, under section 2262, he elects to relinquish the land to the claimant and to take its value, aside from the improvements, instead of paying for the improvements, then, under section 2263, "if the value of the improvements exceeds the value of the land, aside from the improvements, the court may order that the occupying claimant shall, by a time to be specified in the order, take the land and pay the ascertained value thereof to the plaintiff, and in default of such payment, the plaintiff shall take possession of the land discharged

from all claim of such occupying claimant." Or, under section 2265: "If the value of the land, aside from the improvements, exceeds the value of the improvements, the court * * * may order either that the plaintiff shall pay for the improvements before he shall be allowed to take possession of the land, or that the land be divided between the occupying claimant and the plaintiff according to their respective rights."

The power of the court to order the claimant to take the land and pay the value thereof (sec. 2263), and upon payment of such value to require the plaintiff to make the claimant a conveyance of the land (sec. 2264), as well as to order that the land shall be divided between the occupying claimant and the plaintiff (sec. 2265), is dependent upon the consent of the plaintiff to take the value and relinquish the land. Sec. 2262. In other words, the court has no power to divest him of the land, either in whole or in part, except in answer to his own request for leave to relinquish the land. This is evident as to part, by the terms of section 2266, "no partition shall be ordered if the plaintiff insist upon his right to retain the land." Yet, to sustain the judgment rendered in this case, we would have to hold, that, although the court had no power to take from the plaintiff an undivided moiety of his land, it had power to take the whole of his land, without his consent. Such a construction must be faulty; it is absurd; it is not consistent with the well-defined limits of the principle upon which legislation of this character has been, and can be, upheld. It is inconsistent with the general character and scope of the enactment, and would bring sections 2263 and 2264 within the interdiction of the constitution. It would be to convert those sections of the act, evidently intended to confer a benefit upon the plaintiff and to relieve him from a strained situation, into an engine for the destruction of his constitutional rights. Such a

construction is not demanded by the language in which the act is framed.

By the construction we have given the act, reading the power given to the court to make the orders therein recited as the predicate of, and its exercise the answer to, plaintiffs' prayer for leave to relinquish the land, those sections are brought into harmony with the whole enactment and the constitution. This construction would be more obvious, if sections 2263, 2265, and 2266, in the order named, appeared in one section, and the phraseology of section 2266 was as follows, "unless the said plaintiff shall insist upon his right to keep the said land," and section 2264 followed as a separate section, requiring the plaintiff, " *whenever allowed to relinquish the land*, upon payment, to make a deed," etc. Now this is the very condition in which we find this act when it was originally passed in 1825. As aids in construing a doubtful statute, all acts on the same subject may be taken together and examined in order to arrive at the true result. Sedgwick on Con. Stat. Law, 209. And although when a statute differs in its language from a prior statute on the same subject it is an intimation that a different construction is intended (*Rich v. Keyser*, 54 Pa. St. 86), yet this rule does not obtain when the change is one of phraseology merely and the sense remains the same. *Burwell v. Tullis*, 12 Minn. 572.

Tracing this act through its successive revisions we find that, while its arrangement has been changed, and, from time to time, its phraseology, to some extent, yet its sense remains the same ; that sense more obvious and striking, however, in the first act than in any of its subsequent revisions. As a curious illustration of how an act may sometimes be unintentionally revised into relative obscurity, compare sections 2262 to 2266, inclusive, with the same matter contained in the act of 1825, which is as follows : "Sec. 3. * * * It shall also be lawful

for the plaintiff in the suit at law to file his cross-bill, praying for leave to relinquish the land to the defendant, and to receive the value thereof aside from the improvements,   *   *   *   and if, on inquiry by the said court, before a jury or otherwise, it shall appear that the value of the said improvements exceeds the value of the lands, aside from the said improvements, the said court may decree that the said defendant in the suit at law shall take the said lands, paying the appraised value therefor; and that in default of such payment by a time limited in the said decree, the plaintiff may have possession of said lands, discharged from all claims for the said improvements; but if the value of the lands shall exceed the value of the improvements, the said plaintiff in the suit at law may be decreed to pay for the said improvements, before he shall be allowed to have possession of the said lands; *or*, the said court may, in its discretion, decree a partition of the premises between the parties according to their respective rights in equity, *unless* the said plaintiff shall insist upon his right to keep the said lands, and pay for the improvements." "Sec. 4. That whenever the said plaintiff *shall be allowed to relinquish the land* to the defendant, as is provided in the preceding section, he shall, upon the payment of the money by the defendant, make to the said defendant a general warranty deed of the said lands." 1 Acts of 1825, pp. 344, 345.

We hold the act of 1825, as it now appears in Revised Statutes, 1879, from section 2259 to 2268, to be constitutional, and the judgment entered in this case unauthorized by that act, for which reason the judgment is reversed and the cause remanded to the circuit court for entry of a proper judgment in accordance with this opinion. And appellants having neglected or refused to exercise their privilege of election to take the value of the land aside from the improvements, the injunction will be made perpetual and appellants forever enjoined

from taking possession of said lands, under said judgment, or having execution thereof, unless, on or before a reasonable day to be fixed by said court in its decree, they pay the respondents, or into the court for their use, the value of the improvements as found by the verdict of the jury, against which amount, however, is to be set off and deducted so much of appellants' judgment for rents and profits, in the action of ejectment, as remains unsatisfied, the injunction to be dissolved on such payment.

On the other questions discussed, we concur in the opinion of the St. Louis court of appeals (15 Mo. App. 367). All concur.