RUAL W. MILLER and THELMA MILLER, Appellants, v. A. O. HABERMAN and VIRGINIA HABERMAN, Respondents, No. 41491—224 S. W. (2d) 1002.

Division One, December 12, 1949.

*Charles L. Chalendar* and *Frank B. Williams* for appellants.

*Lincoln, Lincoln, Whitlock & Haseltine* for respondents.

VAN OSDOL, C.—Action in ejectment to recover possession of a small irregular rectangular tract of land at the south end of Lot Three, Block Five, in Park View Place, Greene County. The small tract is improved by a deep well, and by a frame well house housing the well and automatic pumping equipment. The defendants by answer prayed for alternative relief—(1) a decree determining title in defendants; (2) a decree reforming deeds on the ground of mistake; and .(3) an order directing the conveyance (of the small disputed area) by plaintiffs to defendants upon the payment by defendants of the determined value of the land aside from the improvements. The defendants further prayed for such other relief as to the court might

seem just and proper. The trial court dismissed plaintiffs' petition; found that the small parcel of land, described in the decree, was included in a conveyance to plaintiffs "by mutual mistake and was never intended to be conveyed"; and ordered defendants to pay plaintiffs $175, the value of the described small tract. Upon such payment by defendants, plaintiffs were ordered to make a conveyance of the small parcel of land to defendants.

Plaintiffs were granted an appeal to the Springfield Court of Appeals, but that court transferred the cause to this court on the ground the case involves "title to real estate." Miller v. Haberman, Mo. App., 219 S. W. 2d 656; Section 3, Article V, Constitution of Missouri 1945, Mo. R. S. A. § 3, Art. V. The opinion of the Springfield Court of Appeals may be examined for study of the issues raised and the relief sought by the pleadings.

The case presents interesting questions of the applicability of equitable relief, and of the remedial powers of a court of equity.

January 6, 1937, C. H. Fredrick and wife, owners of the land, executed an amended plat of Park View Place, upon which plat Lot Three of Block Five is shown to have a frontage of 110 feet on the south side of Park Avenue, and the lot is shown to be 220 feet in depth. Lot Sixteen of Block Five is shown to have a frontage of 124 feet on the west side of Mentor Road. The entire south (end) line of Lot Three is coextensive with the west 110 feet of the north line of Lot Sixteen. This common boundary of the lots is the site of the dispute between the parties, plaintiffs and defendants.

The pumping facilities, mentioned supra, are partly north and partly south of the common boundary of the two lots, Three and Sixteen. The deep well, housed by the frame well house, is a little north of the center of the well-house structure. The well is entirely (about 2') north of the common boundary line of the two lots. The frame well house, a retangular structure 9.2'. (east-west) x 8.7', sits on the boundary line at an (northeast-southwest) angle. The northeast corner of the structure is 5.6' north of the common boundary line of the two lots, and the northwest corner is 4.2' north of such line. The northwest corner of the well house is 0.8' east of the west line of Lot Three, and the southwest corner of the structure is 2.25' east of the west (end) line of Lot Sixteen.

In the years 1937-1938 the Fredricks, who then owned all of Block Five, drilled the deep (700 feet) well, and constructed the well house housing essential pumping equipment. Thereafter, "as people built houses, we (the Fredricks) looked them up and furnished water." Fredrick testified that when the well was drilled and the pumping facilities installed, it "was a wilderness out there . . . I had it (the well) drilled on Lot Sixteen. I thought it was on Lot Sixteen." It cost just a few dollars under $1000 to drill the well, and the pumping equipment cost a little better than $500.

By warranty deed dated April 24, 1934 (1943), acknowledged April 28, 1943, C. H. Fredrick and wife conveyed Block Five, except Lots Nine, Thirteen and *Sixteen* to Arthur and Ida M. Adams. The Adamses conveyed Lot Three of Block Five to plaintiffs, Rual W. Miller and Thelma Miller, husband and wife, by warranty deed dated October 4, 1945. The plaintiffs paid $300 for Lot Three. Neither of these two conveyances contained any reference to the pumping facilities. On cross-examination plaintiff Rual W. Miller was asked, "did you understand that for that $300 you were buying the well, well-house, and the machinery?" The answer was, "No." Plaintiffs have built a residence on Lot Three, expending around $8300. Plaintiffs are of the opinion Lot Three, exclusive of the residence building, is now worth "at least $800."

June 4, 1943, C. H. Fredrick and wife conveyed Lot Sixteen (and other lots) to defendants, A. O. Haberman and Virginia Haberman. The conveyance included "all improvements including deep well and equipment on *Lot* Five, and all water mains and meters now being used in connection with said deep well." (Our italics.) On the same date defendants executed a deed of trust securing their $750 note to C. H. Fredrick, which deed of trust described property, "All of Lot Number Sixteen, Block Number Five, in Park View Place, Amended Plat, in Greene County, Missouri, together with all improvements thereon, including deep well . . . ."

Defendant A. O. Haberman has continued to operate the pumping plant and is presently supplying water to thirty-four consumers residing in the vicinity. After plaintiffs acquired title to Lot Three, plaintiff Rual W. Miller asked defendant A. O. Haberman to furnish water from the well for use in the house plaintiffs had built on Lot Three. Plaintiffs have continued to use water supplied by defendants.

The evidence clearly supports a finding that all of the parties to the various conveyances, mentioned supra, were unaware the well, well house and pumping equipment were not wholly situate on Lot Sixteen. Their mistake was discovered by plaintiffs when they were measuring to determine the location of the residence they subsequently built on Lot Three. A survey made at plaintiffs' instance disclosed the (well) improvements are located partly on Lot Three, as stated supra.

It is seen from an examination of the findings, judgment and decree that the trial chancellor was of the opinion defendants were entitled to equitable relief. The chancellor was of the view the various conveyances could not be reformed because the parties' predecessors in title, the Fredricks and the Adamses, were not parties to this action. Consequently, as stated, the trial court directed the conveyance of the small tract (in the decree particularly described) to defendants upon their payment of the sum of $175 to plaintiffs. The

relief was granted on the ground of mutual mistake or series of mistakes "shared by every party involved."

Plaintiffs-appellants have taken the position they bought all "the deed called for," that is, Lot Three "and everything that was attached to it." They contend the trial court erred in admitting parol evidence of the intention of the parties to the conveyances mentioned. Plaintiffs-appellants say the intention of the parties to a deed must be gathered from the language of the instrument, aided where necessary by the surrounding circumstances. The instrument must be interpreted by what the parties have said in the instrument, not by what they intended to say (Rummerfield v. Mason, 352 Mo. 865, 179 S. W. 2d 732). Plaintiffs-appellants further contend the relief of reformation on the ground of mistake is not available where, as in the instant case, the mistake was not in the writing embodying the contract, but was of an extrinsic fact which, had it been known, would probably have induced the parties to make a different contract. In other words, plaintiffs-appellants say, the court cannot supply an agreement that never was made (Krick v. Thompson, 349 Mo. 488, 162 S. W. 2d 240). Plaintiffs-appellants further urge the order directing the conveyance of the described tract to defendants-respondents is an unconstitutional deprivation of property for private use. Section 28, Article I, Constitution of Missouri 1945, Mo. R. S. A. § 28, Art. I. In urging the last contention, plaintiffs-appellants cite the case of Stump v. Hornback, 94 Mo. 26, 6 S. W. 356, action to recover compensation for improvements made in good faith in which defendants (who had prevailed in an ejectment action) were ordered to convey the land to plaintiffs under Sections 2262-2265 R. S. 1879, now Sections 1551-1554 R. S. 1939, Mo. R. S. A. §§ 1551-1554. The land aside from the improvements was of less value than the improvements. Since defendants did not elect to take the land's value and relinquish the land, the judgment was (although the sections of the statute were not) obnoxious to constitutional provisions (Section 20, Article II, Constitution of Missouri, 1875).

A court of equity has jurisdiction to relieve parties to a transaction from the consequences of mistake. The granting of relief on the ground of mistake is one of the most familiar functions of the court. 19 Am. Jur., Equity, § 51, p. 72.

The rule precluding the consideration of extrinsic evidence of the intention of the parties to a deed as stated in the case of Rummerfield v. Mason, supra, is not applicable in the instant case wherein relief is sought on the ground of mistake. Employers Indemnity Corporation v. Garrett, 327 Mo. 874, 38 S. W. 2d 1049.

In the instant case it is clear that all the parties to the various conveyances, mentioned supra, were in ignorance of the true location of the well, well house and pumping equipment. The evidence shows

plaintiffs did not contemplate the purchase of the pumping facilities. They contracted to buy Lot Three. The consideration, $300, paid by plaintiffs for Lot Three is indicatory the very land in dispute (on which the valuable pumping facilities are situate) was not thought to be a part of Lot Three. They had assumed such facilities were located on other land. Such was the belief of the Fredricks when they sold Lot Three to the Adamses, plaintiffs' predecessors in title. The Fredricks believed the facilities were located on Lot Sixteen and intended to sell and convey Lot Sixteen, including the facilities, to defendants who were buying Lot Sixteen on which the pumping facilities were supposed to be located. It would seem the peculiar circumstances of the instant case would call for the exercise of the powers of the court of equity in granting such relief to the parties, plaintiffs and defendants, as is just and equitable in rectifying the mistake of all of the parties.

The various conveyances did correctly describe the lands contracted to be conveyed. There was no mistake in the instruments. The instruments correctly consummated the various transactions by transferring the ownership of the respective lots as the various parties had agreed. The mistake (entirely innocent of fraud) was as to the fact of the actual location of the well and pumping installations. Strictly, the proper remedy was not reformation whereby the instruments would be changed to consummate agreements the parties had not made, although, were it not for the mistake, the parties might have made different contracts and conveyances. Krick v. Thompson, supra. It has been said, the proper relief, where the contracting parties have been mistaken concerning the subject matter of the instrument (so that their minds have not met and no contract has been actually entered into) is the remedy of rescission or cancellation. Vol. 12, C. J. S., Cancellation of Instruments, § 27b, p. 978.

It is to be clearly inferred the parties would have contracted differently, or at least would not have executed the conveyances, as written, had they known the true location of the well and pumping installations. Yet we believe the relief of complete rescission and cancellation would not be equitable to plaintiffs-appellants, and we believe such relief would not be desirable by plaintiffs-appellants in view of the fact they have improved Lot Three by the building of a house thereon. Compare Phillips v. Cope, Mo. Sup., 111 S. W. 2d 81. The parties cannot be completely restored to their former positions. However, it does seem plaintiffs-appellants should not be permitted to profit by the innocent mistake whereby they were conveyed land including valuable improvements, which improvements they had no expectation of acquiring. And defendants-respondents could not be justly permitted to reacquire the very area of land on which the

pumping facilities are located, except upon the payment to plaintiffs of the land's value.

The title to Lot Three was vested in plaintiffs subject to being divested by applicable equitable principles. Plaintiffs cannot defeat defendants' recovery on the ground the relief granted would take from plaintiffs the small disputed area. Luker v. Moffett, 327 Mo. 929, 38 S. W. 2d 1037. The case of Stump v. Hornback, supra, cited by plaintiffs, is not in point. No doubt the trial chancellor, in fixing $175 as the value of the small disputed area (about 45.33 square feet at the rear end of Lot Three), had in mind plaintiffs' evidence that the whole of Lot Three (24,200 square feet) was purchased by plaintiffs for $300 and is now, exclusive of the residence, worth about $800. Of course plaintiffs are and will continue to be to some extent inconvenienced by the irregular offset extending into the rear end of their Lot Three. But plaintiffs have not contended the amount, $175, does not adequately reimburse them for the loss of the small parcel of land.

It seems to us the trial chancellor properly ordered the conveyance of the small tract upon the payment of its value. In this manner the trial court effectuated, in effect, a partial rescission and cancellation of the instruments, thus affording direct relief to plaintiffs and defendants, the real parties in interest, which action of the court appears from a practical standpoint to be just and equitable in the peculiar situation. A court of equity, having acquired jurisdiction (although a litigant has mistaken the specific relief to which he is entitled), will, especially under a general prayer for relief, administer complete justice within the scope of the pleadings and evidence. The "doctrine is too well settled to admit of either discussion or dispute, that when a court of equity once acquires jurisdiction of a cause it will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties." Real Estate Sav. Inst. v. Collonious, 63 Mo. 290 at page 295; Rains v. Moulder, 338 Mo. 275, 90 S. W. 2d 81; Munford v. Sheldon, 320 Mo. 1077, 9 S. W. 2d 907; Growney v. O'Donnell, 272 Mo. 167, 198 S. W. 863; McQuitty v. Steckdaub, Mo. Sup., 190 S. W. 590; Gibson v. Shull, 251 Mo. 480, 158 S. W. 322; Holland v. Anderson, 38 Mo. 55.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.