**McLEAN CONSTRUCTION COMPANY,**
a corporation, Plaintiff,

v.

**GLOBE INDEMNITY COMPANY,** a corporation, Defendant (Neal **B. BROWN,**
Third-Party Defendant).

No. 1541.

United States District Court
W. D. Missouri, S. D.

Dec. 17, 1958.

Turner White III, of Chinn & White, Springfield, Mo., for plaintiff.

Kenneth Reid, of Stewart, Reid & Turner, Springfield, Mo., and McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, Mo., for Globe Indemnity Co.

Henry A. Panephiere, Kansas City, Mo., for Neal B. Brown.

R. JASPER SMITH, District Judge.

This is an action by plaintiff as a third party beneficiary to recover certain monies alleged to be due as a result of a written assignment.

The facts as shown by the evidence are these:

J. W. Bateson Company, Inc., of Dallas, Texas, was the general contractor for construction of family housing at Whiteman Air Force Base, Knob Noster,

Missouri. Plaintiff, McLean Construction Company, was a subcontractor under an agreement with Bateson for certain earth moving and grading required by the basic contract with the Department of the Army. In turn on January 26, 1957, plaintiff contracted with Neal B. Brown, third party defendant, to complete a portion of the work which it was responsible for performing, the finished grading and replacing of top soil on certain areas at the Air Force Base. The contract price for this work was $2,357.50. As a part of the agreement by Brown, he covenanted to provide a performance and payment bond acceptable to McLean. In due course defendant Globe Indemnity Company executed its bond number 524607 in the amount of $2,357.50 as surety for Brown.

In August, 1957, certain controversies having developed in connection with the performance of the contract by Brown, a conference was arranged on the 16th of that month at the Air Force Base with parties in attendance representing the General Contractor, Bateson, the plaintiff, McLean, the third party defendant, Brown, and defendant, Globe. At that time Brown had performed a portion of his contract with McLean, estimated at about one-third. Brown was represented at this conference by attorney Walter S. Pettit, Jr., of Springfield, Missouri. Globe was represented by its Claim Manager, George L. Long. Pettit and Long, representing their respective interests and attempting to save those they represented from harm, are the two central figures who drew up and negotiated the contract of assignment about which this litigation centers.

The conference was devoted primarily to a discussion of ways and means by which the work assigned to Brown under the subcontract could be completed with reasonable dispatch. At the conference, Bateson gave notice to Brown and McLean that if work was not commenced by August 20, 1957, to complete the remainder of Brown's subcontract, McLean's contract would be considered in default. At the same conference it developed that Brown was making claim either against McLean or the General Contractor, Bateson, for extra work done on the Air Force Base in a claimed amount in excess of $12,000.

Brown was interested in an arrangement by which he could be relieved of responsibility under his contract. That was the primary objective of his attorney in discussions at the general conference and in private discussions with Long, as the representative of Globe. Long, on his part, recognizing that there was a strong possibility of loss by his company because of non-performance of the contract by Brown, and knowing of Brown's claim for the extra work, desired an assignment of Brown's interest in the contract as well as an assignment of any additional monies that might be due Brown. He was uncertain whether or not a formal application for bond with the standard assignment and subrogation agreement had been executed in the first instance by Brown.

At the time of the conference none of the parties had any clear notion of the cost of completing Brown's subcontract, and in the preliminary stages Pettit and Long discussed the possibility of Globe assuming Brown's contract and completing it, along with the alternate possibility that Globe might want McLean to do the work and permit Globe to pay the penal sum of the bond.

A first draft of the assignment was prepared. Pettit and Long examined it and discussed it at length, it was revised, retyped, and in its final form was executed on August 16, 1957, by Brown and by Long. The assignment, between Brown, the party of the first part, and Globe, as party of the second part, omitting formal portions and preliminary recitals, is as follows:

"Now, therefore, in consideration of the execution of the aforementioned bond, second parties' assumption of the sub-contract in case of default, and for the purpose of affording Second Party additional security, it is hereby agreed by and between the parties hereto that in

the event party of the first part should default or for any reason fail to perform under the said sub-contract between party of the first part and McLean Construction Company, party of the second part shall be subrogated to all the rights and interests of party of the first part in said sub-contract, including deferred or reserved payments, current and earned estimates and final payments and any and all monies and securities that may be due and payable at the time of such default on said sub-contract or on account of extra work or material supplied in connection therewith, or that may hereafter become due and payable on said sub-contract. And the party of the first part hereby authorizes the party of the second part to endorse in the name of the party of the first part, and to collect any check, draft, warrant or other instrument made or issued in payment of any monies due on such sub-contracts and to disburse the proceeds thereof, to such person, persons, or corporations as their interests may appear."

This is the portion of the assignment which furnishes the basis of the action pending now.

McLean, faced with the dilemma of default as the deadline approached which Bateman had established, gave notice to Globe and made demand for it to perform under the assignment. When Globe gave no indication of its willingness to do so, McLean on August 20, 1957, entered a written agreement with Johnmeyer Construction Company of Fayette, Missouri, to complete the work which Brown originally had undertaken. In due course Johnmeyer completed the work. McLean demanded payment by Globe. Globe admitted liability to the limits of the original bond, $2,357.50, but denied it was liable for the additional costs. McLean then brought this suit. Its theory is that under the original contract with Brown it had the right to provide for the performance of

the work if Brown defaulted; that by the agreement of August 16, 1957, between Brown and Globe, the latter assumed the contractual liabilities of Brown; that plaintiff is a third party beneficiary of that assignment from Brown to Globe; and that Globe is now responsible for the amount it cost to bring in Johnmeyer. The critical issue is the definition of the contract rights which plaintiff derived from the assignment from Brown to Globe. The parties stipulated prior to trial that if plaintiff prevails as to Count I, which in substance alleges plaintiff's purported rights under the assignment, the verdict should be for plaintiff in the amount of $15,-750, and that if defendant prevails as to that Count the verdict should be for plaintiff in the amount of $2,357.50.

All agree that the significant portion of the assignment is contained in the language *"second parties'* (sic) *assumption of the sub-contract in case of default,* \* \* \*."* Plaintiff contends that this imposes a responsibility on Globe to complete the contract with McLean or in lieu thereof to pay the full cost of completion. Globe contends that the quoted portion, read in context, indicates an intention simply to succeed to all of Brown's rights to receive money as a part of the contract. Defendant further contends that if the quoted language lends itself to the construction urged by plaintiff, it does not represent the intention of the parties, in effect it is the result of a mutual mistake in that the contract fails to reflect the intention of the parties at the time of its drafting, and that the contract therefore should be reformed to reflect the true intention of the parties.

It is clear that plaintiff, as third party beneficiary, has no more rights under the contract than Brown, and that any defense available to Globe so far as Brown is concerned, is equally available to it with McLean. Rouse v. United States, 1954, 94 App.D.C. 386, 215 F.2d 872; Ellis v. Harrison, 1891, 104 Mo. 270, 16 S.W. 198; Llewellyn v. Butler, St.L.App.1915, 186 Mo.App. 525, 172 S.

W. 413; 2 Williston on Contracts, Section 394.

■ It is equally true that if the contract on its face is ambiguous parol evidence is permissible to show its true meaning. Haseltine v. Farmers' Mut. Fire Ins. Co., 1924, Mo.Sup., 263 S.W. 810; Interior Linseed Co. v. Becken-Moore Paint Co., 1918, 273 Mo. 433, 202 S.W. 566; National Bank of Commerce of Kansas City v. Flanagan Mills & Elevator Co., 1916, 268 Mo. 547, 188 S. W. 117; Kellerman Contracting Co. v. City of St. Louis, Mo.App., 1940, 135 S.W.2d 369.

■■ Furthermore, if there is an allegation of mutual mistake, or an allegation that is the equivalent of alleging mutual mistake, it is true that evidence can be shown demonstrating the mistake and demonstrating the true intention of the parties. Commercial Standard Ins. Co. v. Maryland Cas. Co., 8 Cir., 1957, 248 F.2d 412; Miller v. Haberman, 1949, 359 Mo. 1012, 224 S.W.2d 1002; Employers Indemnity Corp. v. Garrett, 1931, 327 Mo. 874, 38 S.W.2d 1049; Jackson v. Merz, Mo.App., 1949, 223 S.W.2d 136. It must be understood, of course, that under those circumstances the evidence must be clear and very convincing. Blevins v. Thompson, Mo., 1953, 255 S.W.2d 787; Van Eaton v. Dennis, Mo., 1951, 242 S.W.2d 21; Commercial Standard Ins. Co. v. Maryland Cas. Co., D.C.W.D. Mo.1956, 147 F.Supp. 539.

Three criteria were named as consideration for the execution of the assignment. The first was Globe's previous execution of the bond, the second was Globe's "assumption of the sub-contract in case of default," and the third was the obtaining of additional security for Globe. If the assignment in this case had gone no further than the printed assignment in connection with the application for the bond in the first instance, Globe might have defended on the ground that there was no consideration for the second assignment. But this assignment went substantially beyond the scope of the original one, and was in fact a new contract between them. Not only was Globe subrogated to all the rights and interest of Brown in the McLean contract, but Globe also became subrogated to any money Brown had coming "on account of extra work or material supplied"— approximately $12,000 according to the evidence—which according to Long's testimony Globe was vitally interested in obtaining. And according to the testimony of witness Pettit, this was an amount, discussed at the conference, which he, as Brown's attorney, had concluded probably should be collected from the Government or the general contractor, and not from a claim against McLean under the contract. Thus Globe was getting something substantially in excess of the matters covered in the original assignment, and we must conclude that in consideration of that excess, certain obligations accrued.

■ Plaintiff's rights under the new assignment require construction of the quoted language "second parties' assumption of the sub-contract in case of default." The problem becomes one of a legal definition of the word "assumption." Webster's New International Dictionary (2d Ed.) defines it as the "act of taking for or upon oneself, as by investing oneself with a form, attribute, or office; * * *." In Mann v. Ferdinand Munch Brewery, 1919, 225 N.Y. 189, 121 N.E. 746, 748, it is said:

"To assume the lease meant to assume all of it and not such part only as might please the assignee according to subsequent events.

"The definition of the word 'assume' in matters of law is 'to take upon one's self,' or the agreement of the transferee of property to pay the obligations of the transferor which are chargeable on it. Springer v. De Wolf, 194 Ill. 218, 62 N.E. 542, 56 L.R.A. 465, 88 Am.St.Rep. 155. * * * Schley v. Fryer, 100 N.Y. 71, 74, 2 N.E. 280 * * *."

Other cases in which the word "assume" has been given legal meaning are St. Louis & S. Ry. Co. v. Stewart, Mo., 1916, 187 S.W. 836; Crone v. Stinde, 1900,

156 Mo. 262, 55 S.W. 863, 56 S.W. 907; Heim v. Vogel, 1879, 69 Mo. 529.

From the foregoing it is clear that Globe took upon itself or adopted the obligation of Brown. The language cannot be considered ambiguous to the extent that parol evidence is required to explain it. And in the absence of ambiguity, oral testimony is not admissible to prove an intention different from that expressed in the written agreement itself. Krug v. Bremer, 1927, 316 Mo. 891, 292 S.W. 702; Jones v. Shepley, 1886, 90 Mo. 307, 2 S.W. 400; National Cylinder Gas Co. v. G. H. Packwood Mfg. Co., Mo.App., 1948, 208 S.W.2d 825. However, even if the evidence of meaning and intent of the parties is considered, it does not alter the end result. The circumstances surrounding the execution of the contract indicate that Long well realized the strong probability of loss by his company. He desired to improve his position. This was done in effect by Globe stepping into Brown's shoes with the aim of obtaining the credit due for prior work in the hope of compensating for the detriment of the impending default. This is what he bargained for and achieved. It is now too late to escape the impact which comes as the product of that maneuver.

That leaves only the question of mutual mistake, the presence of terms in the contract that did not represent the intentions of the parties. Defendant contends that the contract should be reformed to express the true understanding of the participants. Where relief on the ground of mutual mistake is sought, parol evidence is admissible to show the circumstances and the actual intent of the parties. Commercial Standard Ins. Co. v. Maryland Casualty Co., supra; Miller v. Haberman, supra. And to the extent that it is admissible, I am required to consider the evidence furnishing a basis for Globe's contentions. Although there is some indication in the record that Pettit may have been acting for both Globe and Brown at an earlier stage, it is quite clear that he was acting only for Brown, with Globe's knowledge, at the time the contract was written. It is equally clear from the evidence that Pettit's primary intention as the attorney for Brown was to "get him off the hook", as he expressed it. There were two possibilities as a part of the preliminary discussion: One was to have Globe assume the contract in its entirety; the other to pay the face amount of the bond. Pettit testified that when the final document was drafted he incorporated only that portion which called for Globe to assume the contract. Long, with more than thirty years experience in the claim department with Globe, even though not a lawyer, could hardly be considered a novice in disposing of vexatious matters in connection with the settlement of bond claims. While it is true that neither party knew how much it would cost to finish the job, that, in and of itself, is not sufficient to show mutual mistake. Clearly the amount of the cost was not a matter of primary concern at the time. The high remedy of reformation is available only within sharply limited areas. The mistake affording ground for the relief must be mutual. It must appear that both parties have done what neither intended. The proof must be clear and convincing. In this case the evidence most persuasive indicates that none of these requirements is present. This contention, therefore, must be ruled against defendant. Employers Indemnity Corp. v. Garrett, supra.

It follows that Count I must be ruled in favor of plaintiff, and the Clerk is directed to enter judgment for the sum of $15,750 and costs.

Counts II and III are claims in tort and in contract which were alleged to have been incurred prior to default. Plaintiff has failed to sustain the burden of showing that these are proper items under the assignment, and the Clerk is directed to enter judgment for the defendant on Counts II and III.

Under the original indemnity agreement executed by Brown on January 26, 1957, it was provided that Brown "does hereby covenant and agree to in-

demnify and save the surety (this defendant) harmless from and against every claim, liability, cost, charge, counsel fee (including fees of special counsel wherever the surety deems necessary), expense, suit, order, judgment and adjudication whatsoever" in anywise growing out of the work contracted to be done under the contract. Globe is entitled to judgment against the third party defendant in the amount of any judgment rendered here in favor of plaintiff. The Clerk is therefore directed to enter judgment in the third party complaint in favor of Globe Indemnity Company, as third party plaintiff, against Neil B. Brown, as third party defendant, in the sum of $15,750 and costs.

It is so ordered.