**STATE ex rel. Kay DREY et al., Relators,**

v.

**The Honorable G. J. HOESTER, Judge, Circuit Court of St. Louis County, Respondent.**

No. 61355.

Supreme Court of Missouri, En Banc.

Dec. 15, 1980.

Lewis C. Green and Richard D. Lageson, St. Louis, for relators.

Thomas W. Wehrle, County Counselor, Michael D. Gates, Asst. County Counselor, Clayton, for respondent.

MORGAN, Judge.

This original proceeding in mandamus is somewhat of a sequel to *Drey v. McNary*, 529 S.W.2d 403 (Mo. banc 1975), and turns on whether or not the mandate of this Court in the latter case deprived the trial court therein of jurisdiction to entertain motions, filed after remand, for reimbursement, accounting of funds and allowance of attorneys' fees. For reasons hereinafter discussed, we hold that it did not.

Consideration of the immediate question requires at least a limited recitation [1] of the factual situation from which the *Drey* case stemmed; and, it is of interest that plaintiffs in the underlying cause are, generally, the relators in the instant action.

In early 1969, all of the parties actively supported the approval of two bond issues by the voters of St. Louis County for the purpose of acquiring new park sites and the construction of certain new recreational facilities therein. One proposition (No. 2) authorized issuance of *general obligation bonds* for the purchase and improvement of park lands; and, the other proposition (No. 3) authorized the issuance of *revenue bonds* to establish a system of public recreation, including swimming pools, skating rinks and golf courses. A feasibility study led to the conclusion that the "market" for revenue bonds, backed only by anticipated income from recreational facilities, would be poor at best; and, the county sought ways to improve the marketability thereof by increasing their security. Such efforts were reflected in the prospectus furnished to potential buyers of the bonds as detailed at 407 of *Drey*, but for our immediate interest it is sufficient to note only a new commitment of the general credit of the county, *i. e.*, "The County will make up any deficit from other funds available"[2] and rather obliquely funds from Proposition No. 2.

In *Drey*, plaintiffs (relators here) recognized the threat of use of Proposition 2 funds to meet revenue bond obligations and presented the issue to this court. As shown at 411, this Court said:

> Plaintiffs seek to enjoin the use of *general obligation funds* to create the recreational facility at Queeny. The record does not support such relief, for it does not establish that use is *proposed* or *contemplated*. We must point out that all we have held is that Proposition 2 money is not usable to construct a rink, pool or golf course.

(Emphasis added.)

For purposes of later reference, we quote further from the opinion in *Drey*, at 412–13:

> Plaintiffs' contention that they are entitled to recover taxable costs both on appeal and in the trial court has merit. The suit was filed by plaintiffs in the public interest on behalf of themselves and all other citizens and taxpayers of the county interested in the development and financing of public parks * * * Plaintiffs are the prevailing parties within the meaning and intent of §§ 514.060 and 514.160, RSMo 1969, and should recover all the taxable costs, the amount thereof to be determined by the trial court and expressed in the judgment entered upon remand of this case.
>
> \* \* \* \* \* \*
>
> The judgment that "the recreational center as now proposed may be built within the confines of Queeny Park" is affirmed; the remainder of the judgment, except the two parts not appealed from by defendants (referred to in footnote 2), is reversed. The cause is remanded with *directions that the trial court enter judgment consistent with this opinion.*

After remand of the original cause, the defendants (county) voluntarily dismissed

---

1. Those interested may see the extensive and rather detailed recitation thereof in *Drey*.

2. In *Drey* at 407, it was noted, in footnote 2, that: "The trial court ordered stricken this and any like representations pledging the general credit of the county to the revenue bonds. The

County has not appealed from this part of the decree." Neither did the County appeal from that portion of the trial court decree that plaintiffs could inspect the feasibility study and prospectus at reasonable times.

their counterclaim which had not been adjudicated nor appealed. At the invitation of the trial court, relators as plaintiffs had submitted a proposed draft decree which, *inter alia*, would have: (1) ordered defendants to account for any monies expended from the general obligation bond issue fund for the construction of rinks, pools or golf courses; (2) required relators, within thirty days after service of the accounting, to notify the court as to further appropriate proceedings, and to file such supplemental motions or pleadings or other papers as they deem appropriate; and (3) reserved jurisdiction to supervise the accounting and adjudicate any issues arising therefrom, and to award such other and further relief as the court might deem meet and proper.

The county objected by letter and submitted its proposal. In reply, relators, in support of their request for an accounting, by letter, filed a newspaper article quoting defendant's counsel as stating that "removing G. O. bonds from the rink and pool fund 'will be mostly a cost accounting procedure'" * * * and about $500,000 in gift funds "can help replace G. O. funds used in the pool and rink projects."

On January 25, 1979, the trial court entered a decree which did not order an accounting, a hearing on attorneys' fees or reserve jurisdiction to consider such matters.

On February 7, 1979, relators filed a motion to amend the judgment and decree to provide that the trial court would retain jurisdiction to adjudicate two motions—*one* for an accounting and reimbursement of the general obligation bond issue fund and a *second* for allowance of attorneys' fees. Attached to the latter was an affidavit of the Auditor for St. Louis County that from his limited review of invoices and related records in the Accounting Office of the county, he had determined that substantial expenditures had been made from the general obligation funds to pay for the construction of recreational facilities, and that on June 24, 1976, $846,780.01 had been transferred from Queeny Park Gift Funds to the general obligation bond funds without explanation.

Thereafter, the trial court on April 10, 1979, concluded that:

[B]y reason of the mandate of the Supreme Court, this Court lacks jurisdiction to entertain in this cause the motion for accounting and reimbursement, or the motion for allowance of attorney's fees. *City of St. Charles v. Schroeder*, 510 S.W.2d 202, 203 (Mo.App.1974). Accordingly, the Court intends to overrule the motion to amend judgment so as to reserve jurisdiction to entertain those motions, and to dismiss those motions for lack of jurisdiction.

However, the question of jurisdiction is debatable. See, *e. g., Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, 656 (Mo. banc 1962). In order to permit plaintiffs to seek extraordinary relief to resolve this question, the Court will delay entering an order overruling or dismissing any of the pending motions until April 25, 1979. If by that time plaintiffs have filed with an appellate court an application for extraordinary or other relief, this Court will further delay entering such order pending the outcome of such proceedings. If no such application has been filed on or before April 25, 1979, this Court will then enter its order as indicated above.

Upon petition of relators, this Court ordered an alternative writ of mandamus to issue; and, the sole and only issue now for resolution is whether or not the trial court lacks jurisdiction to entertain the two motions noted by reason of the mandate of this Court in *Drey*. Without commenting on the merits of said motions, we rule that for at least three reasons the trial court has jurisdiction to act in the premises.

First: Section 527.080, entitled "Supplemental relief," in Chapter 527 of the statutory law of this state, pertaining to Declaratory Judgments, provides:

Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed suffi-

cient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

Consistent therewith is Rule 87.10 of this Court.

From the pleadings in this mandamus proceeding, the possibility appears that respondents were using general obligation funds, while the *Drey* case was pending on appeal in this Court, in a manner inconsistent with the ruling therein and one not "proposed or contemplated." We also note the further possibility that the challenged use of the same has now been corrected. Resolution of such uncertainties undoubtedly comes within the intent and purpose of § 527.080 and Rule 87.10 providing for supplemental relief in a declaratory judgment action. As said in *Benton v. Alcazar Hotel*, 354 Mo. 1222, 194 S.W.2d 20, 24 (1946): "Though made in an action under the Declaratory Judgment Act, the conditional award was pursuant to the petition for further relief by owners–plaintiffs, and moreover the decree, in making the award to Alcazar conditional, was in harmony with *the principle that a court generally has the inherent power to make such proper orders as are necessary to effectuate its decrees.* Borchard, Declaratory Judgments, 2d Ed., p. 441; . . . ." (Emphasis added.)

Second: Respondent may act under the principle that equitable jurisdiction having once attached under the pleadings, the trial court "should not relax its grasp upon the res until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties." *Miller v. Haberman*, 359 Mo. 1012, 224 S.W.2d 1002, 1006 (1949). Conditions existing at the time of entry of the decree should have controlled. This principle was clearly articulated recently in *Willman v. Beheler*, 499 S.W.2d 770, 778 (Mo.1973), wherein it was said:

Equity will not suffer a wrong to be without a remedy, and seeks to do justice and avoid injustice. *Hydesburg Common*

*School Dist. v. Rensselaer Common School Dist.*, 218 S.W.2d 833 (Mo.App. 1949). Once having acquired jurisdiction equity will retain it, under a prayer for general relief (there was such a prayer in this petition), to administer full and complete justice, within the scope of pleadings and evidence, between the parties. *Anison v. Rice*, 282 S.W.2d 497 (Mo.1955); *Rockhill Tennis Club of Kansas City v. Volker*, 331 Mo. 947, 56 S.W.2d 9, 20 (1932); *Merz v. Tower Grove Bank & Trust Co.*, 344 Mo. 1150, 130 S.W.2d 611, 621 (1939). In framing its decrees equity has a broad discretion to adapt the relief to the circumstances of the particular case. *Merrick v. Stephens*, 337 S.W.2d 713 (Mo.App.1960); 27 Am.Jur.2d Equity § 247. While a court of equity is reluctant to, and ordinarily does not, grant a mere money judgment, it may do so in an appropriate case, *Sebree v. Rosen*, 374 S.W.2d 132, 138[8] (Mo.1964); *Anison v. Rice*, supra, 282 S.W.2d 1. c. 502[4]; *Louis v. Andrea*, 338 S.W.2d 96, 105[13] (Mo. 1960); 30 C.J.S. Equity §§ 71, 72; 30A C.J.S. Equity § 599, fn. 72, p. 667, where the necessities of the situation require this type of relief. *The relief granted by equity is governed by the conditions and exigencies of the case shown to exist at the time of the entry of the decree, and not by circumstances existing at the time suit is filed. . . .*

(Emphasis added.)

Third: The mandate handed down in *Drey* does not preclude further consideration of unanswered issues by the trial court. As said in *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, 656 (Mo. banc 1962):

There was no issue before the supreme court as to the fees and expenses of plaintiffs' attorneys and such issue was not adjudicated. The directions in the opinion and mandate did not deprive the circuit court of its jurisdiction and power to hear and determine the application for allowances of fees and expenses to plaintiffs' attorneys. *Sprague v. Ticonic Bank*, 307 U.S. 161, 168–169, 59 S.Ct. 777, 780–781, 83 L.Ed. 1184.

Consistent therewith is the more recent holding of this Court in *Sebree v. Rosen*, 374 S.W.2d 132 (Mo.1964), which articulated fully the effect of an appellate court mandate upon later proceedings in the trial court. Adequate for present purposes is the following taken therefrom:

> Where a judgment is reversed and remanded with specific directions to enter a particular judgment, the mandate is in the nature of a special power of attorney and must be followed by the trial court without deviation, but the rule is not applicable where a judgment is reversed and remanded for further proceedings in accordance with the opinion because in every case of remand further proceedings should be "in accordance with the opinion" whether or not that admonition is appended. (Citations omitted.)

*Id.* at 136.

The ruling in *City of St. Charles v. Schroeder*, 510 S.W.2d 202 (Mo.App.1974), involved an outright reversal by mandate and is not applicable to the instant case. "In order fully to effectuate the mandate, action taken inconsistent therewith pending the appeal may and should be corrected, even though no specific directions to that effect are given." 5B C.J.S. Appeal and Error § 1966 at p. 581.

We rule only that the respondent, trial court, has jurisdiction to consider the pending motions.

The alternative writ heretofore issued is made peremptory.

All concur.