Richard B. BOHLKEN and Laura L. Bohlken, Appellants,

v.

D.G. (Richard) MONSEES and Ruby I. Monsees, Respondents.

No. WD 33658.

Missouri Court of Appeals, Western District.

May 31, 1983.

Rehearing Denied Aug. 2, 1983.

James T. Buckley and Max E. Mitchell, Sedalia, for appellants.

Mark T. Kempton, Sedalia, for respondents.

Before TURNAGE, P.J., and PRITCHARD and KENNEDY, JJ.

KENNEDY, Judge.

The trial court denied the petition of sellers of a certain tract of farmland for reformation of the deed. The trial court also gave judgment in favor of the buyers against the sellers for the rental value of 7.9 acres included in the deed which was occupied by the sellers for a period of 4½ years after the sale. The sellers appeal.

We affirm the judgment.

The facts of the controversy are as follows:

Plaintiffs Richard B. Bohlken and Laura L. Bohlken owned a farm in Pettis County, adjoining a farm owned by the defendants D.G. (Richard) Monsees and Ruby I. Monsees. Located on the Monsees' tract was a retirement home complex operated by them. The relative locations of the two tracts can best be understood by reference to the following map:

The cross-hatched tract in the southwest corner was a part of the Bohlkens' farm. It was bounded on the west by the road, on the north by a hedge row, and on the east and south by fences.

There is no doubt that it was this tract which was intended by both sellers Bohlken and buyers Monsees to have been the subject of the real estate sale—although sellers Bohlken claimed to have retained a strip of approximately 12 feet along the east side thereof. The Monsees did not share that understanding, and the dispute actually commenced over the 12-foot strip, as we shall explain in due time. The Bohlkens have now waived any claim to the 12-foot strip and it is not involved in this lawsuit except as an evidentiary matter.

The description in the deed, however, actually conveyed (as determined by a later survey) not only the 12-foot strip west of the fence but an additional 7.9 acres lying east of the fence. Referring to our map, the eastern boundary of the surveyed tract described in the deed is represented by the broken line. We here copy the deed description:

Thirty-nine (39) acres, more or less, being all that part of the Southwest Quarter of the Southwest Quarter lying South of a

hedge fence, in Section Eight (8), in Township Forty-five (45) North, of Range Twenty (20) West of the Fifth Principal Meridian, in the County of Pettis and State of Missouri (as is shown on plat of Section Eight (8), Township Forty-five (45) North, of Range twenty (20) West of the Fifth Principal Meridian in Pettis County, Missouri, contained in Abstract of Title No. 8706 of Pettis County Abstract and Title Company).

The deed was dated October 24, 1975. Each party occupied up to the east fence until 1978. Monsees assumed the fence was his east line. Bohlken on the other hand assumed the true line lay 12 feet west of the fence. Neither party had any suspicion that the line, according to the deed description, lay 290 feet east of the fence at the north end and 240 feet east of the fence at the south end.

The discrepancy came to light when Monsees harvested some bluegrass turf within the 12-foot strip west of the fence in 1978, and the Bohlkens sent him a bill for the value of the turf. This stimulated Monsees to hire a surveyor to locate the lines according to the description. The survey, made in 1979, revealed the location of the eastern boundary as explained above.

On April 21, 1980, Monseeses dispossessed Bohlkens by erecting a fence along the east boundary as shown by the survey. The Bohlkens then commenced this suit for reformation and for ejectment.

I

It is to be kept in mind that this action is one for reformation of the deed, and not one for rescission thereof. (Whether plaintiffs had a case for rescission, or whether that remedy is now foreclosed, is beyond the scope of this opinion.)

The testimony of defendant Richard Monsees was that he had bought the land upon the assumption and belief that the tract contained 40 acres. He said that when the tract was first priced to him at $50,000, he rejected it upon the ground that $1,250 per acre was too much. Later he agreed to give $875 per acre, resulting in the $35,000 price which was agreed upon, although he acknowledged that he assumed that the eastern fence was the boundary line. This version was corroborated by Hank Monsees, son of the buyers, who actually negotiated the deal on their behalf. The sellers were represented in the negotiations by Clay Schroeder, a real estate salesman. Mr. Schroeder testified that there was never any discussion of the number of acres in the tract, or price per acre, and that all of his discussion with Hank Monsees was on the basis of the tract lying within the fences. The sellers and buyers never talked directly with each other before or at the time of closing the sale.

The evidence before the court justifies the conclusion that this was a case in which the minds of the parties never actually met. The trial court could have believed from the evidence before him that the sellers intended to sell the tract enclosed by the fences, the visible boundaries, regardless of the amount of acreage and regardless of the price per acre, while the buyers, the Monseeses, intended to buy 40 acres at a price of $875 per acre, although they mistakenly assumed that there was that amount of land within the fences. The land had on it a ravine and timber, which may account for the fact that the acreage shortage was not apparent to the naked eye.

The legal axiom that solves this case is, that equity will not make a contract for the parties, when they themselves have not agreed. The plaintiffs have not proved what the parties' contract actually was. Equity will reform a contract to conform to the actual intent of the parties, if the written contract, sought to be reformed, expresses an agreement which was not the actual agreement of the parties. But in order to reform the contract, it must be shown what were the terms of the real agreement. The relief which the plaintiffs are asking is that the description in the deed be amended to except from the deed description a strip of land on the east side of the described tract 290 feet wide at the north end and 240 feet wide at the south.

The resulting acreage would be about 32 acres, instead of the 40, or 39, acres, called for by the deed. Mr. Monsees' testimony was that he never agreed to such a contract. He said that he bought the land upon the assumption and belief that the tract, as the deed stated, contained 40 acres, or nearly that. If equity were to grant the Bohlkens' requested relief of reformation, it would be to make a contract for Monsees which he says (and the trial court was at liberty to believe) he never made. It would be to make for him a contract by which he purchased 32 acres at $1,093 per acre, rather than 40 acres at $875 per acre.

The principle is thus stated in *Harley v. Magnolia Petroleum Co.,* 378 Ill. 19, 37 N.E.2d 760, 765, 137 A.L.R. 900 (1941):

Mistakes are generally divided into two groups, first, those fundamental in character, relating to an essential element of the contract which prevent a meeting of the minds of the parties and so no agreement is made. These generally have to do with such matters as the existence and identity of the subject matter, errors as to price, quantity, and the like. In the other class of mistakes an actual good-faith understanding is reached but through some error, not expressed, the agreement reduced to writing is not the actual agreement. The former of these classes constitutes ground for rescission but not reformation, while the latter may be reformed. An action to reform a written agreement rests upon a theory that the parties came to an understanding, but in reducing it to writing, through mutual mistake, or through mistake of one side and fraud on the other, some provision agreed upon was omitted, and the action is to so change the instrument as written as to conform it to the contract agreed upon, by inserting the provisions omitted or striking out the one inserted by mutual mistake. Equity cannot make a new agreement for the parties under the color of reforming the one made by them, or add a provision which they never agreed upon. Where a writing expresses an actual agreement it cannot be reformed by inserting provisions not agreed upon.

The mistake in this case was of the first category. Professor Williston states the principle in these terms:

Still more clearly if, because of mistake as to an antecedent or existing situation, the parties make a written instrument which they might not have made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to make. This is simply an application of the long familiar principle that the courts will not make contracts for the parties.

13 Williston, Contracts, § 1549, at 134–35 (3d ed. 1970). See to similar effect *Miller v. Haberman,* 359 Mo. 1012, 224 S.W.2d 1002, 1006 (1949).

The trial court was not in error in denying plaintiffs' petition for reformation.

II

■ Having found that plaintiffs had occupied the defendants' property for 4½ years and that its rental was $50 per acre per year, the court was not in error in giving defendants judgment for $1,775.50 upon their counterclaim. That plaintiffs occupied the same in good faith, believing it was theirs, is beside the point. *Johnson v. Schwarz,* 349 S.W.2d 56, 59 (Mo.1961).[1]

Plaintiffs for a defense against the counterclaim point to the language in two letters from buyer Dick Monsees to Mr. and Mrs. Bohlken. In one letter, dated May 29, 1979, in which Mr. Monsees informed Mr. and Mrs. Bohlken of their intention to move the fence to the eastern boundary described in the deed, he wrote: "We will forgo any claim on the crops you raised while you occupied this land in error, but we feel justified that the crops now growing on the

1. We make no attempt to bring into harmony with our holding here the statutory rule that the plaintiff in a successful ejectment action, § 524.110, RSMo 1978, is entitled to rents and profits only from the time defendant had knowledge of plaintiff's claim. Defendant's counterclaim in this case is not an ejectment action.

land shall be ours." In a second letter dated October 17, 1979, Monsees wrote: "As I originally agreed, we will forego the crops prior to this year but are hereby making claim for the crops being grown on this land this year." There was no development of this proposition in the evidence. Whether Bohlkens surrendered the 1979 crops to the Monseeses the record does not tell us. Had they done so, it might perhaps have constituted a settlement contract. The record does not tell us the value of the 1979 crop claimed by the Monseeses, or the value of the pre-1979 crops.

We cannot say upon this record that the letters' statements furnished any defense to the Monseeses' claims for rental value of the land during the period in question, and we cannot under the standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), convict the trial court of error in holding as he did.

The judgment is affirmed.

All concur.